UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES STANDRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:08-CV-133 |
| | ) | (VARLAN/SHIRLEY) |
| TENNESSEE DEPARTMENT OF | ) | |
| CHILDREN'S SERVICES et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This civil action is before the Court on "State Defendants' Motion to Dismiss the Complaint" filed by Defendants Tennessee Department of Children's Services, Marquita Andrews, and Stacy Sassee (hereinafter collectively referred to as "Defendants"). [Doc. 11.] Plaintiff James Standridge ("Plaintiff Standridge") has not responded to the motion to dismiss, and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. The Court has carefully reviewed the pending motion and supporting memorandum in light of the applicable law. [Docs. 9, 11.] For the reasons set forth herein, the motion to dismiss will be granted.

I. **RELEVANT FACTS**

In December of 2003, Defendant Tennessee Department of Children's Services ("Defendant TDCS") removed legal and residential custody of "S.S." from Defendant Standridge and his former wife, Kathy Standridge. [Doc. 3 at 2.] The basis for removal was Defendant Standridge allegedly having engaged in a homosexual act in front of the child and

Ms. Standridge having failed to protect her from the same. [Doc. 3 at 2.] Having taken S.S. into its custody, Defendant Standridge alleges that Defendant TDCS had the duty to provide for her physical and emotional needs. [Doc. 3 at 2.] Defendant Marquita Andrews ("Ms. Andrews") was eventually assigned to S.S.'s case and was allegedly responsible for making the necessary arrangements for S.S. during the relevant period. [Doc. 3 at 3.]

S.S. was placed in residential foster care in the home of Defendant Stacy Sassee ("Defendant Sassee"). [Doc. 3 at 3.] Plaintiff Standridge alleges that S.S. began to demonstrate "increasingly severe behavioral problems, including sexually 'acting out' with boys in her pre-school, making sexually suggestive comments to peers and adults, and generally behaving in an ever-increasing hyperactive and uncontrollable manner." [Doc. 3 at 3.] S.S. also allegedly began to make statements to various care providers that her father had "hurt" her and performed various sexual acts upon her. [Doc. 3 at 3.] Defendant TDCS then allegedly petitioned to eliminate all contact between Plaintiff Standridge and S.S., which was granted. [Doc. 3 at 3.]

Attempting to clear his name, Plaintiff Standridge allegedly hired counsel, submitted to several psychological examinations, and voluntarily submitted to a polygraph examination. [Doc. 3 at 3.] According to Plaintiff Standridge, the results showed "unequivocally that he was not psychologically disposed to molest his daughter" and that "he had passed all lie detector examination questions." [Doc. 3 at 3.] Plaintiff Standridge then allegedly provided these results to Defendant Andrews, the Guardian Ad Litem assigned to the case, and other agents of Defendant TDCS. [Doc. 3 at 3.] Plaintiff Standridge was then allegedly subjected

2

Case 3:08-cv-00133-TAV-CCS   Document 12   Filed 02/10/09   Page 2 of 19   PageID #: 46

to a criminal investigation for child sexual abuse, but he was eventually cleared of the charges. [Doc. 3 at 3.]

During the investigation of Plaintiff Standridge, S.S.'s behavior allegedly proceeded to deteriorate into "abhorrent behavior." [Doc. 3 at 3-4.] Plaintiff Standridge allegedly requested that Defendant TDCS provide her with immediate and appropriate medical and psychological care, which were allegedly denied. [Doc. 3 at 4.] According to Plaintiff Standridge, S.S. was placed on a medication regime unrelated to her symptoms in doses "that were more appropriate for an adult than for a five-year-old child" and had a total of three visits to three different counselors during the initial six-month period she was in custody. [Doc. 3 at 4.] Through his own efforts, Plaintiff Standridge then allegedly got S.S. into counseling with Child and Family Services of Tennessee and an appointment at Cherokee Health to monitor and change her medication. [Doc. 3 at 4.] Once in steady counseling, S.S.'s behavior allegedly began to improve, and her accusations against Plaintiff Standridge allegedly began to abate. [Doc. 3 at 4.] S.S. allegedly told her counselor that she had been instructed to make statements by Defendant Sassee and her biological mother. [Doc. 3 at 4.]

Around the same period of time, Defendant Sassee was allegedly overheard making a derogatory remark about Plaintiff Standridge's sexuality when leaving court following a hearing or meeting. [Doc. 3 at 4.] Plaintiff Standridge allegedly reported these comments to Defendant Andrews and other agents of Defendant TDCS, but no action was allegedly taken to remedy the situation. [Doc. 3 at 4.]

3

On June 30, 2005, Plaintiff Standridge regained custody of S.S. [Doc. 3 at 5.] Since returning to Plaintiff Standridge, S.S. has allegedly been diagnosed as "seriously emotionally disturbed" and has exhibited "extraordinarily different and bad behavior that she never exhibited before entering" Defendant TDCS's custody. [Doc. 3 at 5.] He also alleges that after S.S. was returned to his custody, Defendant Sassee made derogatory remarks to others about his sexuality "reflecting a homophobic attitude that would be wholly inappropriate to expose" to S.S. [Doc. 3 at 5.] S.S. was also allegedly "coached" to make allegations of sexual misconduct and was otherwise mistreated while in foster care. [Doc. 3 at 6.]

Plaintiff Standridge alleges that Defendant Andrews and other agents of Defendant TDCS violated his due process rights under the Fourteenth Amendment in acting with deliberate indifference to S.S.'s medical and psychological needs and refused to investigate his complaints against Defendant Sassee, which have resulted in psychological harm to S.S. [Doc. 3 at 6.] In the alternative, he alleges that Defendant Andrews, acting within the scope of her employment, neglected S.S.'s medical needs so that Defendant TDCS is liable under the Government Tort Liability Act ("GTLA"). He also alleges that Defendant Sassee published untrue statements to Defendant TDCS and S.S. causing harm to his reputation and resulted in the continued deprivation of the care for S.S. for over one year, causing serious psychological harm to S.S.

On June 28, 2006, Plaintiff Standridge originally brought suit pro se against Defendant TDCS, Defendant Andrews, and Defendant Sassee. [*See* Case No. 3:06-cv-246, Doc. 1.] He subsequently filed a notice of voluntary non-suit on April 12, 2007. [*See* Case

4

No. 3:06-cv-246, Doc. 19.] Plaintiff Standridge then filed an application for leave to proceed in forma pauperis on April 11, 2008, which was granted on June 23, 2008. [Doc. 2.] His pro se complaint in the present action was then filed on June 23, 2008. [Doc. 3.]

## II. STANDARD OF REVIEW

A party may move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Sixth Circuit has made it clear that despite the liberal system of notice pleading, conclusory allegations are not enough to survive Rule 12(b)(6) dismissal. *See MacDermid v. Discover Fin. Servs,* 488 F.3d 721, 733 (6th Cir. 2007). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The issue is not whether the plaintiff will prevail, but whether the claimant is entitled to offer evidence to support his or her claim. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## III. ANALYSIS

In his complaint, Plaintiff Standridge makes a federal claim for violations of his due process rights under the Fourteenth Amendment against Defendant TDCS and Defendant Andrews. It is noted that Plaintiff Dandridge does not sue Defendant Sassee for damages pursuant to federal law, though he does seek injunctive relief to prevent her from participating in foster care programs. [*See* Doc. 3 at 7.] In terms of money damages, he seeks money damages from Ms. Sassee for his defamation of character claim. [*Id*.] Under state law, Plaintiff Standridge also sues for intentional infliction of emotional distress and for relief pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101 *et seq.* The Court will first address whether dismissal is proper as to Plaintiff Standridge's federal claims.

### A. 42 U.S.C. § 1983

Because Plaintiff Standridge pursues a constitutional claim against state actors, he seeks relief pursuant to 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must prove (1) deprivation of a right protected by the Constitution or laws of the United States (2) by person acting under color of state law. *Boykin v. Van Buren Twp*., 479 F.3d 444, 451 (6th Cir. 2007) (citing *Tahfs v. Proctor*, 316

6

F.3d 584, 590 (6th Cir. 2003)). In the present case, Plaintiff Standridge seeks both money damages and injunctive relief for alleged violations of his due process rights.

### 1. Injunctive Relief

In the present case, Plaintiff Standridge seeks, in part, "injunctive relief prohibiting Ms. Sassee from participating in the foster care program of any Department of Children's Services agency or related agency." [Doc. 3 at 7.] As to the claim for injunctive relief, the Court first addresses the threshold issue of whether it has jurisdiction over the matter on the basis of standing. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996). Defendants did not raise the issue of standing in their motion to dismiss. [*See* Docs. 9, 11.] However, because standing goes to the issue of subject matter jurisdiction, it may be raised *sua sponte*. *See Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.") The constitutional requirements for standing arise from U.S. Const. art. III, § 2, which grants federal courts jurisdiction over "cases" and "controversies." *Kardules*, 95 F.3d at 1346. There are three required elements to meet the constitutional of standing: (1) the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interests which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by

a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

The Supreme Court and the Sixth Circuit have clarified the standards for determining whether a plaintiff has satisfied the constitutional requirements for standing:

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."

*Kardules*, 95 F.3d at 1346 (citing *Lujan*, 504 U.S. at 561). Thus, Plaintiff Standridge bears the burden in this inquiry, though the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Kardules*, 95 F.3d at 1346-47 (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

To establish an "injury in fact," a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural or hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). In *Lyons*, a plaintiff sought to bar the Los Angeles Police Department from future use of chokeholds absent an immediate threat of deadly force. *Id.* at 97-98. Because the plaintiff could not establish a "real and immediate threat" that he would again be illegally choked in unconsciousness, the Supreme Court concluded that the plaintiff had provided "an

8

insufficient basis to provide a federal court with jurisdiction" over the claim for injunctive relief. *Id.* at 105-07.

Likewise in the present case, Plaintiff Standridge has failed to establish an "injury in fact" for the injunctive relief he seeks. First, there is no "real or immediate threat" of injury to him in this case. The complaint's states that he has already obtained custody of his daughter, so there is no "real or immediate" threat to him should Defendant Sassee participate in a foster care program. Based on the allegations in the complaint, there is no indication that S.S. will again be removed from Plaintiff Standridge's custody nor that Defendant Sassee would be assigned as foster parent should that situation arise. When construed in Plaintiff Standridge's favor, his complaint alleges an injury or threat of injury that is, at best, conjectural or hypothetical and, therefore, insufficient to establish an "injury in fact." *Lyons*, 461 U.S. at 102.

The Court also finds the redressability element lacking in this case. Even if Defendant Sassee were prohibited from participating in foster care programs, it is unclear how that would redress Plaintiff Standridge's alleged injury for due process violations. As discussed above, Plaintiff Standridge has already regained custody of S.S., and there is no allegation that S.S. will again be removed by Defendant TDCS let alone placed in the care of Defendant Sassee. [*See* Doc. 3.] Thus, it would be merely "speculative" that relief involving a prohibition of Defendant Sassee from foster care program participation would redress Plaintiff Standridge's alleged injury. *Lujan*, 504 U.S. at 561.

9

Accordingly, the Court will dismiss Plaintiff Standridge's claim for injunctive relief due to a lack of standing. Additionally, the Court need not address Defendants' other arguments regarding the injunctive relief claim in light of this dismissal for lack of jurisdiction. Even though Plaintiff Standridge lacks standing for his § 1983 injunctive relief claim, this does not mean that his § 1983 claim for damages is also barred for lack of standing. See *Lyons*, 461 U.S. at 112-13 ("If Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983.") Thus, the Court will proceed to address Defendants' arguments to the extent they may be applicable to Plaintiff Standridge's § 1983 claim for damages.

### 2.   Tennessee Department of Children's Services

Defendant TDCS contends that it is shielded from § 1983 liability for damages due to sovereign immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has previously held that sovereign immunity of the states "neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Sovereign immunity extends to actions brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). It applies to both the states themselves and to "state instrumentalities." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Thus, sovereign immunity also applies to government entities acting as "arm[s] of the State." *Mt.*

10

*Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see also Dixon v. Clem*, 492 F.3d 665, 673-74 (6th Cir. 2007). In *Edelman v. Jordan*, 415 U.S. 651, 663 (1974), the Supreme Court reiterated that it has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Thus, a state could not be sued for money damages absent a waiver by the State or Congressional action. *See id.*

In the present case, Plaintiff is suing TDCS, an arm of the State of Tennessee, for money damages. *See Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (finding that the "Tennessee Department of Children's Services . . . [is] 'the State'" for sovereign immunity purposes). As provided by statute, Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102. Because sovereign immunity applies to TDCS in this case, Plaintiff Standridge's claim against TDCS must be dismissed.

The suit against Defendant TDCS should also be dismissed to the extent Plaintiff Standridge seeks relief for alleged constitutional violations because DCS is not a "person" susceptible to suit under 42 U.S.C. § 1983. The statute provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989), the Supreme Court held that a State is not a "person" within the meaning of § 1983 due to sovereign immunity.

The Supreme Court found that Congress "had no intention to disturb the States' Eleventh Amendment immunity." *Id.* at 66. Thus, States and governmental entities considered "arms of the State" for Eleventh Amendment purposes were not considered "persons" under § 1983. In the present case, as an arm of the state of Tennessee, Defendant TDCS is not considered a "person" under § 1983, and Plaintiff Standridge cannot pursue a § 1983 damages action for constitutional violations against Defendant TDCS.

Accordingly, the Court will grant the motion to dismiss to the extent it seeks dismissal of Plaintiff Standridge's constitutional claims for money damages brought pursuant to § 1983 against Defendant TDCS.

### 3. Marquita Andrews - Official Capacity

In their motion to dismiss, Defendants also contend that sovereign immunity shields Defendant Andrews to the extent she is sued in her official capacity. The Sixth Circuit has previously recognized that "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, in a suit such as this where Plaintiff Standridge has filed his complaint against both Defendant Andrews in her official capacity and sued Defendant TDCS, the official capacity suit is simply redundant. In other words, the § 1983 money damages claim against Defendant Andrews in her official capacity is essentially a suit against Defendant TDCS. Thus, for the reasons already stated above in relation to Defendant TDCS,

dismissal of the § 1983 damages claim is proper to the extent Defendant Andrews is sued in her official capacity.

### 4. Marquita Andrews - Individual Capacity

In his amended complaint, Plaintiff Standridge alleges that Defendant Andrews failed to act, in violation of his constitutional rights. [Doc. 3 at 4-8.] Defendants have raised several arguments as to why the constitutional claim against Defendant Andrews, in her individual capacity, should be dismissed. The Court will address each argument in turn, as is necessary.

Defendants first contend that Plaintiff Standridge's § 1983 claim is barred by the applicable statute of limitations.[1] For § 1983 claims, the applicable statute of limitations is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Because the relevant events in this event occurred in Tennessee, there is a one-year applicable statute of limitations in this case. *See* Tenn. Code Ann. § 28-3-104(a)(3). Defendants contend that Plaintiff Standridge's § 1983 claim against Defendant Andrews is barred by the statute of limitations because it is based on events that occurred years before the complaint was filed in June of 2008.

---

[1] Defendants originally raised the statute of limitations argument as to all of Plaintiff Standridge's § 1983 claims. In light of the Court's dismissal of the other defendants, the Court addresses Defendants' statute of limitations argument to the extent it is applicable to Defendant Andrews, in her individual capacity.

13

As an initial matter, the Court notes that this action has more procedural nuances than suggested in Defendants' supporting brief. Plaintiff Standridge filed an application for leave to proceed in forma pauperis on April 11, 2008, which was granted on June 23, 2008. [Docs. 1, 2.] The Clerk was then directed to file the complaint, which was filed on June 23, 2008. [Docs. 2, 3.] Notably, "a complaint is considered filed on the day the clerk's office receives both the complaint and the application to proceed [in forma pauperis], even if the complaint is not formally stamped 'filed' until a later date when the [in forma pauperis] application is granted." *Scott v. Evans*, 116 F. App'x 699, 701 (6th Cir. 2004) (citations omitted). In the present case, the record indicates that Plaintiff filed an application for leave to proceed in forma pauperis, along with a copy of his complaint, on April 11, 2008. [*See* Docs. 1, 2.] Thus, the Court will consider April 11, 2008, as the complaint's filing date.

Because Plaintiff Standridge's claims are based on events that occurred more than a year before April 11, 2008, the complaint's filing date still falls outside the one-year statute of limitations deadline. However, the Court notes that Plaintiff Standridge previously filed a notice of voluntary non-suit on April 12, 2007. [*See* Case No. 3:06-cv-246, Doc. 19.] Tennessee's "savings statute" provides:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. Actions originally commenced in general sessions court and subsequently recommenced pursuant to this section in circuit or

14

> chancery court shall not be subject to the monetary jurisdictional limit originally imposed in the general sessions court.

Tenn. Code Ann. § 28-1-105. Likely in light of this statute, Plaintiff Standridge filed a new complaint, which stated that "the cause of action will expire if this complaint was not filed by April 12, 2008." [Doc. 3 at 1.] Also, the allegations in the complaint in Case No. 3:06-cv-246 are almost identical to the complaint in the present case. [*See* Case No. 3:06-cv-246, Doc. 1; Case No. 3:08-cv-133, Doc. 3.] Notably, Tennessee's savings statute is only applicable if the original action is commenced within the time limited by the statute of limitation. *See* Tenn. Code Ann. § 28-1-105. Because Plaintiff Standridge filed the complaint in the present case within one year of the filing of his voluntary notice of non-suit in Case No. 3:06-cv-246, the key inquiry is whether the original complaint in Case No. 3:06-cv-246 was timely filed under Tennessee's statute of limitations. [*See* Case No. 3:06-cv-246, Doc. 1.] In other words, the savings statute only applies if the original complaint in Case No. 3:06-cv-246 was timely filed.

Normally, the limitation period begins when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson*, 510 F.3d at 635. In making this determination, courts have "looked to what event should have alerted the typical lay person to protect his or her rights." *Id.* The original complaint in Case No. 3:06-cv-246 was filed on June 28, 2006 [*see id.*], so the Court must determine whether the alleged precipitating event or events occurred more than a year before Plaintiff Standridge filed the complaint in Case No. 3:06-cv-246. Because the § 1983 claims have been dismissed as to all the other

15

defendants, the only federal claims remaining are against Defendant Andrews in her individual capacity. Based on the allegations in the complaint, Defendant Andrews is alleged to have 1) failed to take action in response to Defendant Sassee's alleged derogatory comments about Plaintiff Standridge; (2) failed to investigate Plaintiff Standridge's complaints about Defendant Sassee's care of S.S.; and (3) failed to provide for S.S.'s medical and psychological needs while in the care of Defendant Sassee. [Case No. 3:06-cv-246, Doc. 1 at 4-8.] Because his original complaint was filed on June 28, 2006, Plaintiff Standridge's § 1983 claim against Defendant Andrews would be barred by the statute of limitations if he knew or had reason to know of the basis for his claim more than a year before that date. In other words, if Plaintiff Standridge knew or had reason to know of his claim before June 28, 2005, then the claim would be barred by the statute of limitations.

As to Defendant Andrews' alleged failure to respond to his complaints about Defendant Sassee's derogatory comments, the one-year statute of limitations for claims expired before the filing of the complaint on June 28, 2006. In the complaint in Case No. 3:06-cv-246, Plaintiff Standridge alleges that he previously made complaints to Defendant Andrews about Defendant Sassee's alleged derogatory comments about him, but that Defendant Andrews failed to take action to remedy the situation. [Case No. 3:06-cv-246, Doc. 1 at 4.] Thus, Plaintiff Standridge would have been aware of Defendant Andrews' refusal to address Defendant Sassee's alleged derogatory comments about him at the time he first reported the comments to Defendant Andrews and she took no action. [*Id.*] Because the complaint alleges that Plaintiff Standridge regained custody of S.S. on June 30, 2005,

Plaintiff Standridge's complaints to Defendant Andrews about Defendant Sassee's alleged comments occurred well-before June 28, 2005. [Case No. 3:06-cv-246, Doc. 1 at 5.] Thus, a claim arising from Defendant Andrews' alleged failure to remedy the derogatory comments by Defendant Sassee is barred by the statute of limitations since Plaintiff Standridge was aware or should have been aware of this basis for more than a year prior to the filing of his complaint on June 28, 2006.

Plaintiff Standridge's § 1983 claim is also barred to the extent it is based on Defendant Andrews' alleged failure to provide for S.S.'s medical and psychological needs and refusal to investigate Defendant Sassee's care of S.S. In the complaint, Plaintiff Standridge alleges that he made "complaints regarding S.S.'s care with Ms. Sassee" to Defendant Andrews and "begged that [S.S.] be provided with immediate and appropriate medical and psychological care." [Case No. 3:06-cv-246, Doc. 1 at 3-4, 6.] Thus, Plaintiff Standridge would have been aware of these claims at the time he requested Defendant Andrews to act. Again, because the complaint alleges that Plaintiff Standridge regained custody of S.S. on June 30, 2005, the first requests regarding the care of S.S. to Defendant Andrews occurred before June 28, 2005. [Case No. 3:06-cv-246, Doc. 1 at 5.] Because Plaintiff Standridge's initial complaints regarding the care of S.S. occurred outside the limitations period, his § 1983 claim based on Defendant Andrews' failure to act is barred by the statute of limitations.

Furthermore, Plaintiff Standridge cannot avoid the statute of limitations bar through the continuing violation doctrine. Under the continuing violation doctrine, a defendant's continuing wrongful conduct can extend the accrual of a plaintiff's cause of action. *Eidson*,

17

510 F.3d at 635. A continuing violation requires: (1) the defendant's wrongful conduct continuing after the precipitating event that began the pattern; (2) injury to the plaintiff continuing to accrue after that event; and (3) further injury to the plaintiff must be avoidable if the defendants had at any time ceased their wrongful conduct. *Id.* (citations omitted). However, even if it were contended that Defendant Andrews' alleged failures to act constituted a continuing violation until Plaintiff Standridge regained custody of S.S. on June 30, 2005, such an argument would fail because "mere inaction is not enough to satisfy the doctrine." *Id.* at 637 (finding that allegations involving the failure to conduct a thorough investigation and not informing the juvenile court of a witness's false testimony as failing to establish a continuing violation). Similarly, allegations that S.S. currently "exhibit[s] extraordinarily different and bad behavior" fail to establish a continuing violation. A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* at 635 (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999)). Thus, S.S.'s alleged current behavioral problems fail to overcome the statute of limitations bar because they are simply "continuing ill effects" insufficient to make out a continuing violation.

Thus, because Plaintiff Standridge failed to timely commence his original action in Case No. 3:06-cv-246, the Tennessee savings statute is inapplicable to the § 1983 claim in the present case filed on April 11, 2008. Accordingly, the § 1983 damages claim against Defendant Andrews, in her individual capacity, will be dismissed due to the statute of limitations. It is therefore unnecessary for the Court to address Defendants' other arguments

18

regarding absolute immunity, qualified immunity, and insufficient allegations in the complaint.

### B. State Law Claims

In light of the Court's dismissal of Plaintiff Standridge's federal claims against the Defendants, the Court will decline to continue to exercise supplemental jurisdiction over all of Plaintiff Standridge's state law causes of action against the Defendants. 28 U.S.C. § 1367(c). Accordingly, the remaining state law claims of defamation of character, intentional infliction of emotional distress, and for relief pursuant to the Tennessee Governmental Tort Liability Act will be dismissed without prejudice to refiling in state court.

## IV. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss the Complaint [Doc. 11] is hereby **GRANTED**, whereby Plaintiff James Standridge's federal claims are **DISMISSED with prejudice**. Plaintiff Standridge's state law claims will be **DISMISSED without prejudice to refiling in state court**. As there are no remaining claims, this case is **DISMISSED** against Defendants Tennessee Department of Children's Services, Marquita Andrews, in her official and individual capacity, and Stacy Sassee, individually. The Clerk is hereby **DIRECTED** to close this case.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE